THE STATE (THE ELIZABETH LIBRARY. ASSOCIATION PROSECUTORS) *vs.* WILLIAM LEESTER, COLLECTOR OF THE SECOND WARD IN THE CITY OF ELIZABETH, COUNTY OF UNION.

1. A legislative grant of corporate powers, franchises and immunities must be construed in strict accordance with the objects and purposes intended. Any right, power, or privilege, not expressly granted or necessarily implied, is understood to be prohibited.

2. If a corporation, created for a specific purpose, be exempted from taxation, invest its funds in property to be used for speculation or a direct profit, and not for the specific purposes contemplated by their charter and the objects pretended by the corporators, such property, real or personal, is liable to taxation, although the ultimate appropriation of such profits may be to the object specified. The means employed must be consistent with and necessary to the attainment of the proposed object.

----

*Certiorari* in matter of taxation.

Argued before Justices OGDEN, WHELPLEY, and CLAWSON.

*Chetwood,* for plaintiffs in *certiorari.*

*Green,* for defendants.

The opinion of the court was delivered by

CLAWSON, J. This was a *certiorari* prosecuted by the Elizabeth Library Association against William Leester, collector of taxes of the second ward of the City of Elizabeth, in the county of Union. The plaintiffs complain of the entire tax assessed against them, and ask to be relieved therefrom, insisting that their charter exempts

them from the payment of any tax upon any property, real or personal, that may be held by the association. The reasons relied on by counsel for reversal are four in number, but may all be embraced in the single one, that their property is exempt by law, *i. e.* by the 7th section of their charter. In order to determine the question at issue, we must first ascertain the objects and purposes for which the corporation was created. Our legislature never grants a charter of incorporation with general unlimited and uncontrolled powers—it is always for some specific or particular object or objects generally enumerated in the bill or charter, or preamble thereto.

Dangerous in the extreme would it be, and exceedingly impolitic, to create corporations to hold real and personal estate, and allow them to engage in any and every kind of business *ad libitum.* Soon we should find all legislative functions a nullity, and we should be transferred to the despotism of a series of overgrown and unwieldy corporations. But the wisdom and foresight of our law makers have secured us against any such results thus far, by defining the powers and privileges of particular companies, or have given them a charter, the objects of which, the meaning and intention of the corporators and the legislature, are to be gathered from the law itself.

Then what was the object of the Elizabeth Library Association in asking for corporate powers? They say for themselves, in the preamble to the law incorporating them, which was no doubt shaped by themselves, or according to their wishes and directions, that their " object is the establishment of a library, with all proper conveniences and appurtenances, and the erection of a suitable edifice for its accommodation, with a view to advance the interest of learning generally."

The first section of the act then goes on declaring William W. Pinneo and a number of others, together with all other persons who are or may become their associates, their successors and assigns, to be incorporated by

the name of "the Elizabeth Library Association," and by that name authorizes them to purchase, hold, lease, and convey real and personal estate, "*for the* purpose of carrying out the objects for which the said association is incorporated." The 8th section enacts "that this corporation shall possess the general powers, and be subject to the restrictions and liabilities contained in the act entitled 'an act concerning corporations,' approved the fourteenth day of February, eighteen hundred and forty-six, so far as the same is applicable." One very important provision of the act of eighteen hundred and forty-six referred to, is that authorizing corporations "to hold, purchase, and convey such real and personal estate as the purposes of the corporation shall require, not exceeding the amount limited in its charter."

Whatever may have been, or may yet be the ultimate aim of this association, not clearly and fully expressed in their charter, is not to be guessed at. The mere recital of the preamble and the sections of their own special act, and that part of the general act of eighteen hundred and forty-six, made by themselves equally binding upon them, are amply sufficient to show the limited purposes for which they were incorporated. The ostensible object held out by the company, with the view to induce the legislature to clothe them with corporate powers, is that expressed in the preamble, to "*establish a library, with a view to advance the interests of learning generally.*" The latter clause would seem to be but one of the expected results of the establishment of the library, thus making the "establishment of the library, with all proper conveniences and appurtenances, and the erection of a suitable edifice for its accommodation," the plain and sole object of the association, according to its true legal construction. Be this as it may, it can, in point of principle, make no difference because the object is expressed; and all powers necessary to carry out that object they have the right to exercise, either by implication or by the provisions of the

general act in reference to corporations. No doubt can be entertained, then, that the object of the association is the limited and specific one, for the advancement of learning generally, by the establishment of a library with all proper conveniences and appurtenances, and the erection of a suitable edifice for its accommodation.

The next matter to be inquired into is as to the means, the rights and powers which the company may legally exercise and enjoy, with the view to effect the object proposed. Upon this point we are not without authority; but as a matter of principle, it must necessarily be apparent that only such rights and powers are delegated to the company as are consistent with the object, and proper and necessary to be exercised with a view to the accomplishment of that object. If this company had said to the legislature, when they were incorporated, that they intended to effect their object by the purchase and sale of real estate on speculation; that they intended to erect a great number of stores, dwelling houses, hotels, concert rooms, ball rooms, and a variety of other buildings; that they intended to connect with their business extensive manufacturing establishments of various kinds, in addition to which they intended to establish railroad communication through all the counties of the state, (and this they have the right to do if they can do the other); that they also intended to initiate and build up a grand system of education, by establishing academies in every county in the state; and from these sources of profit effect the object of *establishing a library, with a view to advance the interest of learning generally,* it will be at once admitted that no such corporation as the Elizabeth Library Association would ever have had an existence. The mere allusion to such absurdities clearly shows the necessity of an implied prohibition, that a corporation can exercise such rights, powers, and means as are consistent with and necessary to effect the object expressed or intended by the charter, and no others. The 3d section of the act, approved Feb-

ruary fourteenth, eighteen hundred and forty-six, (*Nix. Dig.* 138) declares that no corporation shall possess or exercise any corporate powers, except such as shall be *necessary* to the exercise of the powers given by the first section or the specific charter. By the 1st section of the general act, the corporation is limited to hold, purchase and convey such real and personal estate as the purposes of the corporation shall require, not exceeding the amount limited by its charter. By the first section of the special charter, the association are authorized to purchase, hold, lease, and convey real and personal estate for the purpose of carrying out the objects for which the said association was incorporated. Now the only building in which this company is authorized to invest the funds of the association, is one suitable for the accommodation of the library, with " all proper conveniences and appurtenances." The *conveniences and appurtenances* here spoken of I suppose apply to all necessary rooms for holding books, transacting business, unpacking, shelving, stairways, and such items and things as are usually found about establishments of the kind for the accommodation of visitors and others. By necessary implication, they have the right to purchase and hold a sufficient amount of land on which to erect their building, and such as is necessary for the association in the enjoyment of all their rights.

But what has a drug store, a tea store, or any other kind of a store (except perhaps a book store belonging to the company itself), or a lecture room for renting, or a ball room, or a freemason's lodge, to do with the library edifice, or any of its conveniences or appurtenances? Or what necessary or consistent connection can there be? It might have been thought convenient by the stockholders, at the time of the erection of the building, to put up a very large building, cut it up into rooms of various sizes, and by the rents arising therefrom, to secure an income to the association. But it is not the kind of edifice spoken of by their charter, or rather it may contain all

the necessary conveniences and appurtenances for the library. And if they had stopped here at the meaning of their charter they would have done well. Not satisfied, however, with accommodating themselves with a library room, &c., they become very liberal all at once, and undertake to accommodate storekeepers, secret societies, balls, lectures, political conventions—nay, it would almost seem an omnibus edifice for the accommodation of everything and everybody. Associations of this kind are entitled, perhaps, to much liberality from courts and from individuals, but when a question of the kind now under consideration arises nothing but principle and strict law, which is the soundest reasoning and philosophy, can settle it. But to add more upon this point would, perhaps, be to hang up my daub, where it would serve as a foil to the pictures of more accomplished limners.

It is urged that the building is an entirety; that no separate and correct valuation of the library room or any of the other apartments can be effected. This is a matter, I take it, to be determined, in the first place, by the assessor of the proper ward. If he rates any portion of the building too high, or taxes what he ought not to, the remedy is by appeal, and ultimately by *certiorari*. But the mere fact of its being an entirety can make no difference. The paramount, and indeed the sole question is, was all this great number of rooms authorized by the charter, and necessary and compatible with the object specified. The mere difficulty of making a correct assessment is no reason why an assessment should not be made. Difficulties of this kind are continually arising, and must continue to arise so long as men differ as to the value of property. Remedies, however, are provided for all proper cases. If this association has the right to build and fit up rooms under the same roof for the accommodation of a dozen different shopkeepers and manufacturers, &c., and claim their exemption, they have the right, upon the same principle, to put them up as separate buildings, and claim

the same exemption.  If they can claim exemption for a dozen rooms upon this principle of entirety, they can make the same claim for fifty, or any unlimited number—all that is necessary is that the whole should be embraced by the same outside walls and covered with a connected roof. This question is not to be determined by the connectedness, entirety, or individuality of the different apartments, but by the appropriateness, adaptedness, consistency, compatibility, and necessity, as said before, of the means to the end and object to be accomplished.  However convenient and desirable to the company, as a source of profit, it may be to. connect this great variety of rooms with their library room or rooms, and the number does not necessarily stop here, they are not compatible with the object proposed, and not necessary to the accomplishment of that object.  In *The State* v. *Commissioners of Mansfield*, 3 *Zab.* 510, I think the correct principle of taxation in all such cases, and perhaps the only general and safe rule, is clearly defined. After describing or enumerating some of the necessary appendages to a railroad, Justice Potts says, " these are within the fair construction of the exempting clause, because they are necessary and indispensible to the operations of the company and the accomplishment of the objects of their charter.  But there must be a limit somewhere to this incidental power of the company to enlarge its operations and extend its property without taxation under this exempting clause, and that limitation, I think, must be fixed where the necessity ends, and the mere convenience begins." In the case of *The Inhabitants of Worcester* v. *The Western Railroad Corporation*, 4 *Metc.* 564, referred to by Just. Potts, in delivering the above opinion, the court said that it might be convenient for the company to acquire and hold certain property, though not necessary to the accomplishment of their object, but that such property would not be exempt from taxation.  The case in 8 *Watts* and *Serg.* 334, contains the same position.

Vol. iv.                              k

In *The State* v. *Ross*, 4 *Zab.* 497, Justice Haines holds that it was not necessary that the college at Princeton should be composed of but one building, and expressly declares that all the separate buildings of president, professors, stewards, students, lecture rooms, and recitation rooms are necessary to the plan and principles on which it is founded. But the Edge-hill property is not put in the same category—it is no part of the college, and not necessary to carry out the object proposed. He says, " It may have been profitable to the college, and a source of satisfaction to the trustees and professors, by its contributions of well prepared students ; but it was not necessary to its success, nor to the accomplishment of its plans and the objects of its charter." In this case he refers to *The State* v. *Commissioners of Mansfield*, 3 *Zab.* 512, above quoted, and approves of the distinction made in that case, and showing that the case is not determined by the entirety or individuality of the college building, but upon the principle of the adaptedness and necessity of the means to the end.

The case in 1 *Dutcher* 315, *State* v. *Newark*, is but a repitition of the *State* v. *Mansfield*, and is determined by that case without further references. Afterwards this case was taken to the Court of Errors, and after elaborate argument by very able counsel, the court, at November term, 1856, unanimously confirmed the judgment of the Supreme Court, referring again to the very important decision made by the Supreme Court in *State* v. *Mansfield*, and no other. See decision of this case in Court of Errors, 2 *Dutcher* 519.

Some of the English judges have held, that if a corporation fulfilled the objects of its creation, they might embark in other undertakings, however various, if the object of the directors be to increase the profits of their company. But the better and settled law now seems to be (the same that it is in New Jersey), that whatever is not expressly granted, or necessarily implied, is impliedly forbidden, as fully appears by the cases herein referred to.

For the English ruling, I would refer to the two cases, *The E. A. Railway Co.* v. *E. C. Railway Co.*, 73 *E. C. L. Rep.* 775, and *Mayor of Norwich* v. *Norfolk Railway*, 82 *E. C. L. Rep.* 397, and the cases therein referred to, for an expression of both opinions. But the majority in both cases are against the extension of chartered powers and franchises by mere implication. Several other cases might be referred to, but I do not deem it necessary. These I refer to because they are comparatively recent cases.

The association has, then, clearly transcended its chartered franchises and powers, by purchasing, building, holding, and renting property not necessary to the accomplishment of the objects of their charter. As to the right of the directors to invest the funds of the association in property which is not compatible with and necessary to the design of the company, that is a matter between the stockholders and directors—we have nothing to do with it here. Such property, however, if acquired and held by the company, they are legally bound to pay tax for. It was said, upon the argument, that the entire building, all its rooms might become necessary for the accommodation of the library and its attachments, and the business operations necessarily connected with it. When this shall become the fact, it will alter things very much from their present condition; and that necessity and the fact of occupying the whole building for the purposes of the library will at once relieve the association of any further tax. At present, however, and this is the only state of things we have any right to consider—a very small portion of the building is occupied by the association. All the remaining portions of the building are rented out to different persons, and occupied for business operations entirely foreign to, inconsistent, incompatible with, and unnecessary to the accomplishments of the objects of their charter. For this property, so long as it remains in this condition, the company is liable to pay tax. This propo-

sitíon is fully sustained by all the cases above referred to—by the *State* v. *Flavell and Fredericks*, 4 *Zab*. 382; *State* v. *Blundell*, *Ibid* 402, and others that might be referred to. The case referred to in the *State* v. *Ross*, 2 *Cushing's Rep*. 611, *Pierce* v. *The Inhabitants of Cambridge*, is a case of somewhat similar character to this one in important aspect. Professor Pierce, of Harvard College, was taxed for the house and lot occupied by him, and rented of the college at a stipulated rent. The court held that the tax was legal, and he was bound to pay it, because, as tenant from year to year, he had an estate in possession, and the college only a reversionary interest, the exemption in that case being of all such "real estate belonging to such institutions as shall be occupied by them, and by the officers of such institutions, for the purposes for which they were incorporated." The case would have been different, the learned judge remarks in delivering the opinion of the court, if the house had been built for the professor, and he had occupied it without acquiring any estate therein or paying rent therefor. Now all of these rooms in this library building pay a stipulated rent, for a longer or shorter term of occupancy, as agreed upon.

I see no possible ground upon which this association can claim exemption for the whole of their building, although it be an entirety, but every reason and authority seem to impel us the other way. The tax must be set aside or abated as to the amount for property actually occupied by the association; but we cannot rule the same in regard to the remainder of the property. All not in the immediate personal occupatión and use of this association is legally subject and liable to taxation. Let a rule to this effect be entered.

If any difficulty arise as to determining the amount to be paid by the association, it will be a proper subject for some future rule by the court.

*Reversed 5 Dutch*. 541.